## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JORGE MORALES VELASQUEZ,<br>WILDER GONZALEZ,<br><br>                Plaintiffs,<br><br>  v.<br><br>U.S. 1 FARM MARKET, INC.,<br>SANGWOOK CHEN,<br><br>           Defendants. | 3:13-cv-00634 (CSH) |

## ORDER

**HAIGHT, Senior District Judge:**

## I.      INTRODUCTION

Pending before the Court is Plaintiffs Jorge Morales Velasquez and Wilder Gonzalez's (hereinafter, collectively, "Plaintiffs") Application for Prejudgment Remedy and Disclosure of Assets, [Doc. 17].  Plaintiffs request that the Court order a prejudgment remedy sufficient to meet Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (hereinafter "FLSA") and the Connecticut Minimum Wage Act, C.G.S.A. § 31-58, *et seq.* (hereinafter "CMWA"), by attaching assets belonging to Defendants in the amount of seventy-five thousand dollars ($75,000).

Both Plaintiffs in this action were formerly employed by Defendants U.S. 1 Farm Market, Inc. and Sangwook Chen (hereinafter, collectively, "Defendants") and worked in Defendants' food market.  Mr. Morales avers that he "worked for Defendants from July 2011 to April of 2013, butchering and packing meat products, filling orders for clients, cleaning, and performing other tasks as assigned by Defendants." [Doc. 13] at 1.  Mr. Gonzalez avers that he "worked for Defendants

1

from January 2012 to April of 2013, packing and labeling produce, unloading deliveries, and keeping

food displays well stocked." *Id.* However, "[d]espite their working almost seventy hours per week,"

Plaintiffs claim that "Defendants never paid Plaintiffs more than $445 per week, and often less." *Id.*

When Plaintiffs requested an additional raise in their salaries, they were told to look for another job.

*Id.* Plaintiffs accordingly seek a Court order that Defendants pay them unpaid minimum wages;

unpaid overtime; liquidated damages; prejudgment and post-judgment interest; and attorneys's fees

and costs pursuant to federal and state minimum wage and overtime law. *Id* at 1-2.

## II.      PLAINTIFFS' MOTION FOR PREJUDGMENT REMEDY

The parties agree that the Connecticut laws governing the availability of prejudgment

remedies, i.e., C.G.S.A. § 52-278a, *et seq*., govern the availability of a prejudgment remedy against

Defendants in this matter.  C.G.S.A. § 52-278d provides that prior to issuing a prejudgment remedy,

a court must hold a hearing "limited to the determination of" the following issues:

> (1) [W]hether or not there is probable cause that a judgment in the amount of the
> prejudgment remedy sought, or in an amount greater than the amount of the prejudgment
> remedy sought, raking into account any defenses, counterclaims or set-offs, will be rendered
> in the matter in favor of the plaintiff, (2) whether payment of any judgment that may be
> rendered against the defendant is adequately secured by insurance, (3) whether the property
> sought to be subjected to the prejudgment remedy is exempt from execution, and (4) if the
> court finds that the application for the prejudgment remedy should be granted, whether the
> plaintiff should be required to post a bond to secure the defendant against damages that may
> result from the prejudgment remedy or whether the defendant should be allowed to substitute
> a bond for the prejudgment remedy.

C.G.S.A. § 52-278d.  Should the Court, "upon consideration of the facts before it and taking into

account any defenses, counterclaims, or set-offs, claims of exemption and claims of adequate

insurance, find that the plaintiff has shown probable cause that such a judgment will be rendered in

the matter in the plaintiff's favor in the amount of the prejudgment remedy sought," and, moreover,

that "a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the [C]ourt." *Id.*

The Court held such a hearing on Plaintiffs' Application for Prejudgment Remedy, [Doc. 17], on October 30, 2013 and November 18, 2013. Defendants have not argued that the payment of any judgment that may be rendered against them is adequately secured by insurance, nor have they argued that any property sought to be subjected to a prejudgment remedy is exempt from execution, nor that Plaintiffs ought to be required to post a bond to secure Defendants against possible damages that might result from a prejudgment remedy. Defendants have also not sought to substitute a bond for the prejudgment remedy. In fact, at the conclusion of the hearing on November 18, 2013, Defendants' counsel conceded that Plaintiffs had demonstrated probable cause with respect to some sort of prejudgment remedy, but denied that Plaintiffs had presented sufficient evidence as to provide probable cause as to the specific amount they request, i.e., $75,000. That denial, meaning no disrespect, is essentially a quibble.

After considering the evidence before it, including but not limited to the oral testimony of both Plaintiffs given at the November 18, 2013 hearing date, the Court concludes that Plaintiffs have shown probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment sought, will be rendered in Plaintiffs' favor in this matter. Consequently, the Court GRANTS Plaintiffs' Application for Prejudgment Remedy and Disclosure of Assets for the reasons set forth below.

Probable cause in a prejudgment remedy context "is defined as a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. The

determination of probable success involves only a weighting of probabilities." *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 3:00-CV-02198, 2002 WL 32506290 at *2 (D.Conn. Aug. 12, 2002) (internal quotation marks and citations omitted); *see also, e.g., TES Franchising, LLC v. Feldman*, 286 Conn. 132, 137 (Conn. 2008) (citation omitted).  A showing of probable cause for purposes of a prejudgment remedy does not require the same level of proof as is required at a trial or a dispositive motion stage.  Indeed, as the Connecticut Supreme Court has repeatedly stated, "[t]he hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim," and accordingly a plaintiff need not "establish that he will prevail, only that there is probable cause to sustain the validity of the claim." *Bank of Boston Connecticut v. Schlesinger*, 220 Conn. 152, 156 (Conn. 1991) (quoting *New England Land Co., Ltd. v. DeMarkey*, 213 Conn. 612, 620-21 (Conn. 1990)).  "The court's role in such a hearing is to determine probable success by weighting probabilities," a "process [which] applies to both legal and factual issues." *Id.* (citations omitted).

### A.    Plaintiffs' Wage Claims

As an initial matter, the Court finds that there is probable cause that Plaintiffs will prevail on their unpaid wage claims.  Under both the federal Fair Labor Standards Act and the Connecticut wage and hour statutes, an employer is required to pay at least minimum wage for each hour of an employee's work and to pay one and a half  times an employee's regular hourly rate of pay for each hour worked in excess of 40 hours within a week.  *See* 29 U.S.C. §§ 206, 207; C.G.S.A. § 31-60. The Connecticut basic minimum wage rate per hour has been $8.25 since January 1, 2010 – i.e., for the entirety of the relevant time period.  *See* C.G.S.A. § 31-58(i).   Accordingly, the Connecticut overtime rate of pay for each hour above 40 worked within a week is $12.375.  The federal basic

minimum wage rate per hour has been $7.25 for the entirety of the relevant time period.  *See* 29 U.S.C. § 206(a)(1)(C).  Accordingly, the federal overtime rate of pay for each hour above 40 worked within a week is $10.875.

Plaintiffs allege in oral testimony and in their pleadings that they were paid between $400 and $445 per week for what constantly and consistently constituted 67-hour work weeks over the course of their employment with Defendants.  The Connecticut minimum rate of pay, rather than the lower federal minimum rate of pay, is generally applied in Connecticut wage-related cases such as this one.  Pursuant to 29 U.S.C. § 218(a), "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law ... establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter." 29 U.S.C. § 218(a).  Thus "[t]o the extent that state law provides a greater remedy than the FLSA, Plaintiff would not be precluded from recovering under it." *Estanislau v. Manchester Developers, LLC*, 316 F.Supp. 2d 104, 112 n.2 (D.Conn. 2004); *see also, e.g., Morrison v. Staples, Inc.*, 3:08-CV-00616, 2008 WL 4911156 at *3 (D.Conn. Nov. 13, 2008).  Under this rubric, then, each Plaintiff should have earned at least $664.125 per week he worked for Defendants, a figure reached by multiplying $8.25 by the first 40 of the 67 hours each Plaintiff avers he worked per week, which comes to $330, and adding that amount to the amount reached by multiplying $12.375 by the additional 27 hours of overtime each Plaintiff avers he worked per week, which comes to $334.125.  The combined amounts come to $664.125.  Rendered more formulaically, this calculation may be written as below:

$$(40 \text{ hours} * \$8.25) + (27 \text{ hours} * \$12.375) =$$

$$(\$330) + (\$334.125) = \$664.125$$

In contrast, Mr. Morales Velasquez alleges that he was paid $400 for the first three months (or 13 weeks) in which he worked for Defendants; $420 for the subsequent three months (or 13 weeks) in which he worked for Defendants; and $445 for the final 65 weeks (amounting to a year and several months) in which he worked for Defendants.  Mr. Gonzalez alleges that he was paid $400 for the first seven and a half months (or 34 weeks) he worked for Defendants; $420 for the next six and a half months (or 29 weeks) he worked for Defendants; and $440 for the final two weeks in which he worked for Defendants.  *See, e.g.,* [Doc. 13] at 3-4; [Doc. 17-1] at 8.

Plaintiffs' testimony highlights the discrepancy between what each Plaintiff was paid and what each Plaintiff was owed under the FLSA and CMWA.  For Mr. Morales Velasquez's first 13 weeks of work, he avers that he earned $400, which leaves a deficit of $264.125 per week for these 13 weeks ($664.125 - $400 = $264.125).  Accordingly, Mr. Morales Velasquez is owed $3,433.625 for these 13 weeks ($264.125 * 13 = $3,433.625).  Mr. Morales Velasquez avers that he earned $420 for the next 13 weeks in which he worked for Defendants, leaving a deficit of $244.125 ($664.125 - $420 = $244.125).  Mr. Morales Velasquez is thus owed $3,173.625 for this 13-week period ($244,125 * 13 = $3,173.625).  Mr. Moralez Velasquez avers that he worked for Defendants for another 65 weeks earning $445 per week, leaving a deficit of $219.125 for each of those 65 weeks ($664.125 - $445 = $219.125).  He is therefore owed $14,243.125 for this 65-week period ($219.125 * 65 = $14,243.125).  In total, therefore, Mr. Morales Velasquez is owed $20,850.375 in unpaid wages by Defendants, which the Court rounds to $20,850.38.

Similarly, Mr. Gonzalez avers that he was paid $400 for the initial 34 weeks in which he worked for Defendants, leaving a deficit of $264.125 for each of these 34 weeks ($664.125 - $400 = $264.125).  Mr. Gonzalez is thus owed $8,980.25 for this 34-week period ($264.125 * 34 =

$8,980.25). Mr. Gonzalez avers that he worked for Defendants for a subsequent 29-week period for $420 a week, leaving a deficit of $244.125 for each of these 29 weeks. Accordingly Mr. Gonzalez is owed $7,079.625 for this 29-week period ($244.125 * 29 = $7,079.625). Mr. Gonzalez also avers that he worked for Defendants for 2 additional weeks at $440 per week, leaving a $224.125 deficit for each of these 2 weeks ($664.125 - $440 = $224.125). Therefore, Mr. Gonzalez is owed $448.25 for this 2-week period of work ($224.125 * 2 = $448.25). Altogether, then, Mr. Gonzalez is owed $16,508.125 in total in unpaid wages by Defendants, which the Court rounds to $16,508.13.

At the hearing convened on November 18, 2013, Defendants' counsel raised questions concerning the accuracy of Plaintiffs' self-reported wages and wage increases, in particular the dates on which Plaintiffs received raises and, as well, the calendar dates and holidays on which Plaintiffs worked and did not work, and which day each Plaintiff did not work in any given calendar week.

It is generally true that in an action for overtime or other wages brought under the FLSA, the burden of evidence is upon the plaintiff. *See Arasimowicz v. All Panel Systems, LLC*, – F.Supp. 2d. –, 2013 WL 2446512 at *10 (D.Conn. 2013) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds by IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005)). However, pursuant to pertinent federal and state statutes – i.e., 29 U.S.C § 211(c) and C.G.S.A. § 31-66 – it is an *employer's* responsibility to maintain records showing, *inter alia*, the hours that an employee worked during the previous three-year period as well as the wages that employee was paid. *See* 29 U.S.C. § 211(c) ("Every employer ... shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him...."); C.G.S.A. § 31-66 ("Each employer ... shall keep at the place of employment for a period of three years a true and accurate record of the hours worked by, and the

7

wages paid by him to, each employee, as required by the applicable regulations....").  Plaintiffs here aver, and Defendants appear to concede – or, put another way, have not contested Plaintiffs' assertion either in their pleadings or orally at either date of the Court's prejudgment remedy hearing – that Defendants did not keep such records with respect to either Plaintiff's employment.

"[I]t is well-settled that when an employer fails to keep adequate records of its employees' compensable work periods, as required under the FLSA, employees seeking recovery for oversue wages will not be penalized due to their employer's record-keeping default." *Morales v. Cancun Charlie's Restaurant*, 3:07-CV-01836, 2010 WL 7865081 at *8 (D.Conn. Nov. 23, 2010) (quoting *Reich v. SNET Telecomm. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997)).  Thus plaintiff-employees who find themselves in such a circumstance "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (internal quotation marks and citation omitted).  Indeed, as Chief Judge Hall noted only a few months ago, as the FLSA "requires the employer to keep proper records of wages, hours, and other conditions and practices of employment," in cases such as the one at bar in which an employer has failed "to keep such records, an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Arasimowicz v. All Panel Systems, LLC*, – F.Supp. 2d. –, 2013 WL 2446512 at *10 (internal quotation marks and citations omitted).

Thus "[w]hen a defendant ... fails to maintain employment records as required by [the FLSA], an employee ... may submit evidence from which violations of the Act and the amount of an award may be reasonably inferred." *Reich v. SNET Telecomm. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997); *see*

8

*also, e.g., Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002), *overruled on other grounds by Slayton v. American Express Co.*, 460 F.3d 215 (2d Cir. 2006). As this district has held, such a burden on the part of an employee-plaintiff "to produce 'sufficient evidence' is low and *can be met by that employee's 'recollection alone.'" Arasimowicz v. All Panel Systems, LLC*, 2013 WL 2446512 at *10 (emphasis added) (citations omitted). This view has also been taken by other federal courts around the country. *See, e.g., Barrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 380 (E.D.N.Y. 2012) ("As courts have found, a plaintiff can meet this burden by relying on recollection alone.") (internal quotation marks and citation omitted); *Santillan v. Henao*, 822 F.Supp.2d 284, 294 (E.D.N.Y. 2011); *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335-36 (S.D.N.Y. 2005) ("[I]t is possible for plaintiff to meet this burden by relying on his recollection alone."); *Turner v. Human Genome Science, Inc.*, 292 F.Supp.2d 738, 748 (D.Md. 2003) ("A prima facie case can be made through an employee's testimony giving his recollection of hours worked ... [and that employee's case] is not to be dismissed nor should recovery for back pay be denied, because proof of the number of hours worked in inexact or not perfectly accurate.") (internal quotation marks and citation omitted); *Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975) ("The District Court relied primarily upon plaintiff's own recollections to determine the number of hours she worked ... To do so was proper, as defendants maintained none of the employment records required by the FLSA, and will not be permitted to benefit from their failure to do so.") (citations omitted).

In the case at bar, Plaintiffs have provided sworn affidavits, pleadings, and oral testimony as to their recollections with respect both to their periods of employment and rate of pay per hour during such periods. Pursuant to the above-cited caselaw, the Court holds that under the circumstances and factual record of this action, Plaintiffs have met their evidentiary burden, and that

Plaintiffs have therefore sufficiently shown, for the purposes of this prejudgment remedy ruling, that under the relevant standards there is probable cause that they are owed unpaid wages in the amount of $20,850.38 for Mr. Morales Velasquez and $16,508.13 for Mr. Gonzalez, or, together, $37,358.51.

"Once an employee has produced sufficient evidence of uncompensated overtime and sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference, the burden shifts to the employer to provide evidence showing the precise amount of work performed" in order to challenge a Court's "reasonable inference drawn from the employee's evidence." *Arasimowicz v. All Panel Systems, LLC*, 2013 WL 2446512 at *11 (internal quotation marks and citations omitted).

Defendants have not produced records that definitely establish the hours worked by either Plaintiff or the wages earned for such hours. Accordingly, the Court will consider as true the evidence Plaintiffs have submitted with respect to the hours and dates worked for and the wages earned from Defendants, and finds that there is probable cause to believe that Plaintiffs will prevail on their claims with respect to unpaid wages in the total amount of $37,358.51.

### B.    Plaintiffs' Liquidated Damages Claims

The Court also finds that Plaintiffs are likely to be granted liquidated damages under state law, and, in addition, that there is some possibility that Plaintiffs may also be granted liquidated damages under federal law, though for reasons explained *infra* the Court need not and does not reach a finding on that latter issue within this Ruling.

C.G.S.A. § 31-72 provides that "[w]hen an employer fails to pay an employee wages ... or fails to compensate an employee ... such employee ... *may recover, in a civil action, twice the full*

*amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court....*" C.G.S.A. § 31-72 (emphasis added).  As the Connecticut Supreme Court has noted, while "the statutory language" of C.G.S.A. § 31-72 "does not require evidence of bad faith, arbitrariness[,] or unreasonableness, cases interpreting and applying this statute have required such evidence." *Butler v. Hartford Technical Institute, Inc.* 243 Conn. 454, 470 (Conn. 1997); *see also, e.g., Morales v. Cancun Charlie's Restaurant*, 2010 WL 7865081 at *9.  Within the past several years, this district has allowed plaintiffs to recover liquidated damages under the CMWA in circumstances similar to the ones present in this lawsuit.  For example,  in *Morales v. Cancun Charlie's Restaurant*, the district court held that an employer who had taken "no investigatory or corrective measures" with respect to a plaintiff's inquired about his amount of pay; "made no effort to ensure that [the plaintiff] was paid in full for his work;" tended to "respond[] with profane language and [to] argue[] with [the plaintiff] about his [wage-related] complaints"; and kept no records of the plaintiff's hours, and paid the plaintiff in cash" owed an employee-plaintiff liquidated damages under C.G.S.A. § 31-72. *Morales v. Cancun Charlie's Restaurant*, 2010 WL 7865081 at *9.

A review of the evidence in this matter leads the Court to find, as did the district court in *Morales*, that there is probable cause that Plaintiffs will be able to show bad faith, arbitrariness, or unreasonableness on the part of Defendants.  The Court notes that some of the factors it has taken into consideration for this determination include Plaintiffs' averments that Defendant Sangwook Chen often angrily responded to Plaintiffs' requests for raises; uttered at least one remark to the effect that Guatemalans were greedy; and made comments that Plaintiffs were crazy and should look for other jobs if they wanted more money for the work they performed.  As discussed *supra,* Defendants also (according to Plaintiffs' testimony) paid Plaintiffs in cash, and presumably did not keep records

of Plaintiffs' hours.  The Court therefore finds, given such factors along with the fact that it has already found that there is probable cause to believe that Plaintiffs will succeed in their claim that together they are owed roughly $37,358.51 in unpaid wages by Defendants, that there is probable cause to believe that Plaintiff will receive another $37,358.51 in liquidated damages under the CMWA.

The FLSA also provides for liquidated damages.  Pursuant to 29 U.S.C. § 261(b), "[a]ny employer who violated the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  Thus "[u]nder the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).

In order to avoid liquidated damages under the FLSA, an employer must "show[] that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Id.*  The Second Circuit has repeatedly "characterized the employer's burden as a difficult one" in this regard, "emphasizing that double damages [are] the norm and single damages the exception." *Id.* (quoting *Herman v. RSR Sec. Servs. Lts.*, 172 F.3d 132, 142 (2d Cir. 1999) and citing *Reich v. SNET Telecomm. Corp.*, 121 F.3d at 71) (internal quotation marks omitted)).  In short, in order "[t]o establish the requisite subjective 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* (internal quotation marks and citations omitted). Furthermore, "[e]ven then, the choice not to award liquidated damages is within the court's

discretion." *Arasimowicz v. All Panel Systems, LLC*, 2013 WL 2446512 at *12 (citation omitted). Indeed, 29 U.S.C. § 260 provides that "[i]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, ... the court *may*, in its sound discretion, award no liquidated damages...." 29 U.S.C. § 260; (emphasis added); *see also, e.g., Arasimowicz v. All Panel Systems, LLC*, 2013 WL 2446512 at *12. Defendants have not offered any evidence with which to attempt to carry this burden or to establish that they took "any affirmative action to determine if [their] actions were in compliance with the FLSA." *Id.* (citation omitted).  Given that "there is no indication in the record that the defendants took *any* steps to comply with the FLSAs requirements" as pertaining to the plaintiffs, Defendants simply "have not met this high bar." *Morales v. Cancun Charlie's Restaurant*, 2010 WL 7865081 at *8 (emphasis in original).

As stated *supra*, this Court finds probable cause that liquidated damages will be awarded to Plaintiffs under the CMWA, which renders a higher amount in damages than the liquidated damages provision under the FLSA.  *See, e.g., Andrade v. Kwon*, 3:08-CV-00479, 2012 WL 3059616 at *5-6 (D.Conn. March 26, 2012) (holding that since "[p]laintiffs [could] collect a higher sum under the CMWA" than under the FLSA and the court would not award liquidated damages under both statutory schemes, the court would award plaintiffs "damages under [the state] provision," as courts may award the greater of the two liquidated damages awards when they are both available to a plaintiff and both serve the same purpose) (citation omitted).  Plaintiffs' counsel has suggested that, in addition, Plaintiffs "are likely to recover liquidated damages under [the] FLSA in the amount of $24,800.51" – an amount Plaintiffs calculated using the federal minimum wage of $7.25 rather than

the state minimum wage of $8.25.  *See* [Doc. 17-1] at 9.  However, the Court notes that recent district caselaw has not been consistent with respect to the question of whether a plaintiff may recover liquidated damages simultaneously under *both* the FLSA and the CMWA.

In 2010, District Judge Droney (as he then was) noted that other "courts have held that plaintiffs should be able to recover liquidated damages simultaneously under the FLSA and the applicable state statute where the two statutes serve different purposes."  *Morales v. Cancun Charlie's Restaurant*, 2010 WL 7865081 at *9.  Judge Droney concluded that with respect to the FLSA and Connecticut wage and hour law, "the liquidated damages provisions in the FLSA and [the] CMWA serve different purposes – the FLSA damages are compensatory and the CMWA damages serve a punitive purpose."  *Id.*  Consequently, Judge Droney held that a plaintiff "should be permitted to recover" simultaneous liquidated damages "under both the FLSA and the CMWA."  *Id.*

Indeed, in 1997 the Second Circuit commented that "*[l]iquidated damages under the FLSA are considered compensatory rather than punitive in nature*," and "constitute[] compensation for the retention of a workman's pay which might result in too obscure and difficult of proof for estimate other than by liquidated damages."  *Reich v. SNET Telecomm. Corp.*, 121 F.3d at 71 (emphasis added).  In contrast, the Connecticut Supreme Court has repeatedly stated that liquidated damages under the CMWA spring from a "*remedial statute*," a "primary purpose" of which is "to *penalize* the employers."  *Shortt v. New Milford Police Dept.*, 212 Conn. 294, 309 and 309 n.13 (Conn. 1989) (emphasis added); *see also, e.g., Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 272 (Conn. 2003) ("we previously have acknowledged the *punitive and remedial purposes* of § 31-72.") (emphasis added).  The Connecticut Supreme Court has thus consistently held that liquidated damages under the CMWA "serve a *punitive* purpose," in 2005 commenting that "it is clear that the

purpose of damages under § 31-72 extends beyond that afforded by common-law punitive damages, which are intended to do no more than make the litigant whole; rather, "the statute serves *both a remedial and punitive or deterrent purpose*." *Harty v. Cantor Fitzgerald & Co.*, 275 Conn. 72, 97-98 (Conn. 2005) (emphasis added) (citations omitted).

In 2012, however, Judge Underhill, while noting that "[s]ome Connecticut and New York courts have allowed prevailing parties to collect liquidated damages under both federal and state labor laws when those laws 'serve fundamentally different purposes,'" concluded that he did not believe that "liquidated damages under the FLSA and the CMWA" did in actuality "'serve fundamentally different purposes.'" *Andrade v. Kwon*, 2012 WL 3059616 at *5-6 (citations omitted). Judge Underhill explained that "[b]oth statutes were enacted to deter employers from underpaying workers," and "[t]hus, even though federal courts characterize FLSA's liquidated damage clause as 'compensatory,' and Connecticut courts call the CMWA's clause a 'penalty,' both provisions serve a similar purpose – they deter employers from ignoring wage and hour laws, and raise the price for willful violations of those laws." *Id.* at *6. Further, Judge Underhill wrote, "both statutes redress harm caused by the same conduct; the provisions only award liquidated damages for willful violations of the law." *Id.* Ultimately, Judge Underhill ruled that, "[s]ince the FLSA and the CMWA's liquidated damages do not 'serve fundamentally different purposes,' plaintiffs" in the case before him could "only recover an award under one of the statutes." *Id.* As "Plaintiffs [could] collect a higher sum under the CMWA, [he] award[ed] damages under that provision," as courts may award the greater of the two liquidated damages awards when they are both available to a plaintiff and both serve the same purpose. *Id.* (citation omitted).

This Court need not, in this Ruling, decide whether to follow the analysis and rationale set

forth by Judge Droney or the analysis and rationale set forth by Judge Underhill.  The reason for this is simple math – as discussed *supra*, Plaintiffs have without question established probable cause for a belief that collectively they will recover $37,358.51 in unpaid wages and another $37,358.51 in liquidated damages under the CMWA, which is to say that they have definitively established a final amount of $74,717.02 ($37,358.51 + $37,358.51 = $74,717.02).  The total amount Plaintiffs seek in their Application for Prejudgment Remedy is $75,000; under the circumstances the Court finds that the difference of $282.98 ($75,000 - $74,717.02 = $282.98) is, while not wholly insignificant, significantly close to $75,000, and therefore finds that Plaintiffs ought to receive the prejudgment remedy which they seek of $75,000.  As this dollar amount is already secured through unpaid wages and state statute liquidated damages, the Court will not in this Ruling address whether there is probable cause that Plaintiffs are also likely to be found to be entitled to liquidated damages under the FLSA, or factor any such additional federal liquidated damages award into its prejudgment remedy calculations.

### C.    Attorneys' Fees

Both the FMLA and the CMWA also provide for attorneys' fees.  Pursuant to 29 U.S.C. § 216, "in addition to any judgment awarded to the plaintiff or plaintiffs," a court may "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Pursuant to the CMWA, "[w]hen an employer fails to pay an employee wages ... or fails to compensate an employee ... such employee ... may recover, in a civil action ... such reasonable attorney's fees as may be allowed by the court...."  C.G.S.A. § 31-72.

A right to attorneys' fees exists regardless of whether Plaintiffs are represented by non-profit counsel.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany*

*County Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008) ("The reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization."); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."); *Morales v. Cancon Charlie's Restaurant*, 2010 WL 7865081 at *9 ; *Evans v. Connecticut*, 967 F.Supp. 673, 691-92 (D.Conn. 1997).

The Second Circuit has delved at length into what district courts ought to consider in determining what constitutes reasonable attorney's fees, and has stated that in general a district court should use the standard of "what a reasonable, paying client would be willing to pay, consider[ing] factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively ... [and] the timing demands of the case." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d at 184-85.

Plaintiffs' counsel stated in August of 2013, prior to the two hearing dates, that they "estimate[d] their reasonable fees and costs at about $4,500," and that "[b]y time of trial," they estimated that such "amount would be in the range of $30,000-$60,000." [Doc. 17-1] at 8. Plaintiffs' counsel have not, however, provided any actual or projected breakdown, hourly or otherwise, for these amounts. (The Court notes that in *Morales v. Cancun Charlie's Restaurant*, discussed *supra*, the district court found the request by a plaintiff (who had been represented by non-profit counsel) "for attorney's fees at the rate of $80 for law student interns and $350 for clinical supervisors [to be] reasonable." *Morales v. Cancun Charlie's Restaurant*, 2010 WL 7865081 at *9 (citing *Perez v. By Your Side Homemaker,* 3:08-00602, 2009 WL 1858623 at *11 (D.Conn. June 25, 2009) (holding that

17

essentially identical hourly rates were reasonable)).)

The Court does not dispute Plaintiffs' assertions with respect to attorneys' fees, but it does not and need not make a determination at this time as to their reasonableness; Plaintiffs request a prejudgment remedy of $75,000.  This dollar amount has already been substantially reached by the dollar amount this Court has already found there is probable cause to believe Plaintiffs will receive through a combination of unpaid wages and state liquidated damages.  Consequently the Court does not and need not further address the issue of attorneys' fees, or any specifics thereto, within this Ruling.

## III.    PLAINTIFF'S MOTION FOR PREJUDGMENT DISCLOSURE OF ASSETS

"In addition to remedies otherwise provided by federal law, a party may secure a pre-judgment remedy, as permitted by, and in accordance with, the law of the State of Connecticut." Local Rule 4(c).  Pursuant to C.G.S.A. § 52-278n, a "court may, on motion of a party, order an appearing defendant to disclose property in which he has an interest or debts owing to him sufficient to satisfy a prejudgment remedy.  The existence, location[,] and extent of the defendant's interest in such property or debts shall be subject to disclosure," and "[t]he form and terms of disclosure shall be determined by the court."  C.G.S.A. § 52-278n(a).  Furthermore, a "court may order disclosure at any time prior to final judgment after it has determined that the party filing the motion for disclosure has, pursuant to section 52-278d, ... probable cause sufficient for the granting of a prejudgment remedy."  C.G.S.A. § 52-278n(c).

As this Court has already discussed *supra* within this Ruling, Plaintiffs have sufficiently established probable cause for the granting of a prejudgment remedy.  Given this, the Court hereby ORDERS Defendants to provide Plaintiffs with any and all information that comports with the

18

disclosure requests attached to Plaintiffs' Application for Prejudgment Remedy and Disclosure of Assets as Exhibit C, i.e., [Doc. 17-4].  *See, e.g., Security Insurance Co. of Hartford v. Trustmark Insurance Co.*, 2002 WL 32506290 at *4 (holding that because "plaintiff ha[d] established probable cause sufficient for the granting of a prejudgment remedy, ... defendant [was thereby] ordered to provide plaintiff with" specified disclosure of assets.)  The Court further ORDERS that all such requested information shall be provided by Defendants to Plaintiffs on or before Friday, December 27, 2013.

## IV.    CONCLUSION

For the reasoning described *supra*, Plaintiffs' Application for Prejudgment Remedy and Disclosure of Assets, [Doc. 17], is GRANTED.

It is SO ORDERED.


Dated: New Haven, Connecticut
            November 26, 2013

                                            */s/ Charles S. Haight, Jr.*
                                            Charles S. Haight, Jr.
                                            Senior United States District Judge

19