UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

JORGE MORALES VELASQUEZ and )
WILDER GONZALEZ, )
                               )
      Plaintiffs, )
                               )
      v. )           3:13-cv-00634-GWC
                               )
U.S. 1 FARM MARKET, INC. and )
SANGWOOK CHEN, )
                               )
      Defendants. )

**OPINION AND ORDER RE:**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**(Doc. 56)**

Plaintiffs Jorge Morales Velasquez ("Morales") and Wilder Gonzalez ("Gonzalez") bring this action against Defendants U.S. 1 Farm Market, Inc. and Sangwook Chen ("Chen"), alleging minimum wage and overtime violations under both the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Connecticut Minimum Wage Act (CMWA), Conn. Gen. Stat. § 31-58 *et seq.* (Doc. 14 at 5.) Plaintiffs seek summary judgment as to their FLSA and CMWA claims, damages for unpaid minimum wage and overtime, and a separate award of liquidated damages under both the FLSA and CMWA. The court heard argument on Plaintiffs' Motion on February 18, 2016. For the reasons discussed below, Plaintiffs' Motion for Summary Judgment (Doc. 56) is GRANTED in part and DENIED in part.

## Background

### I.    Undisputed Facts

Defendants U.S. 1 Farm Market, Inc. and Sangwook Chen operate a grocery store, U.S. 1 Farm Market ("Farm Market"), in New Haven, Connecticut. Farm Market has out-of-state bank accounts and accountants, and buys and sells goods, including produce and meat, which travel in interstate commerce. During the relevant time period, the store had gross annual sales in excess of $500,000.

1

Chen is the president of U.S. 1 Farm Market, Inc. He owns 50% of its common stock and holds himself out to be Farm Market's owner. Farm Market is a "mom and pop" type of operation and all of its corporate officers and managers are, with one exception, members of Chen's family. (Doc. 56-2 at ¶¶ 10–11; Doc. 64 at ¶¶ 10–11.) Chen's wife, Ken Hwa Ko, owns the other 50% of U.S. 1 Farm Market, Inc.'s common stock and is the corporation's vice president. Ko does not have an active managerial role in the business. Chen, as owner and President of Farm Market, hired the other family members to work as store managers.

Chen fixed the hours of Farm Market's operation to be the same as those established by his predecessor.[1] Chen posted notices when the store was hiring new workers. He shared the power to hire new employees with both his daughter and daughter-in-law.[2] He played a role in determining employee pay.

Morales began working at Farm Market in July 2011. He worked as a butcher in the store's meat section. Morales worked six days a week. He worked from 8:00 a.m. to 8:00 p.m. for five days, and from 8:00 a.m. to 6:00 p.m. on one day, for a total of seventy hours per week. Morales took a half-hour unpaid lunch each workday, resulting in sixty-seven compensable work hours per week. At the start of his employment, Morales was paid $400 per week. After about

---

[1] The court does not consider this fact disputed because Defendants offer no evidence and assert no specific facts to support its denial, as required. *See* Fed. R. Civ. P. 56(c), (e). Rather, Defendants cite only to evidence that Chen's children determined employee work schedules, but nothing to dispute the allegation that Chen fixed the market's overall hours of operation. (*See* Doc. 64 at ¶ 21; Doc. 64-2 at 15.) Moreover, Chen's denial is contradicted by his testimony at his Rule 30(b)(6) deposition. (Doc. 64-2 at 16 ("Q: [W]hen you bought the store yourself you decided that that was going to remain the hours of operation, is that correct?  A: Yes.  Yes.").)

[2] The court does not consider this fact disputed because Defendants offer no evidence and assert no specific facts to support its denial, as required. *See* Fed. R. Civ. P. 56(c), (e). Moreover, the denial appears to be contradicted by the very evidence cited by Defendants. (Doc. 64 at ¶ 23; Doc. 64-2 at 14–15 ("Q: So it was you and [your daughter-in-law] who decided whether or not to hire people, is that accurate?  A: And my daughter.  Q: Okay.  So it was the three person?  A. Yeah, yeah, yeah.").) Defendants also cite to a few of Chen's Rule 30(b)(6) deposition statements discussing how prospective employees spoke to his daughter and daughter-in-law when seeking employment, (*see* Doc. 64-2 at 12, 18, 22), but that does not dispute the fact that Chen had the power to hire or that his daughter and daughter-in-law discussed hiring decisions with him.

three months, he asked Chen for higher pay and received a raise of $20 per week.[3]  After three more months, Morales asked Chen for another raise and received an additional $25 per week, for a total weekly pay of $445.  Approximately one year and four months after Morales first began working at Farm Market, he again requested a raise from Chen and was told he would receive another $20 raise in six months.  Thereafter, Chen did not meet Morales's pay demands and Morales decided to seek employment elsewhere.  His last day of work at Farm Market was April 17, 2013.[4]

Gonzalez started working as a produce clerk in Farm Market on or about January 9, 2012.  He worked six days a week.  Gonzalez also worked from 8:00 a.m. to 8:00 p.m. for five days, and from 8:00 a.m. to 6:00 p.m. on one day, for a total of seventy hours per week.  Gonzalez took a half-hour unpaid lunch break every day, resulting in sixty-seven compensable work hours per week.  Like Morales, Gonzalez was paid $400 per week at the start of his employment with Farm Market.  In August 2012, he asked Chen for higher pay.  From September 2012 to March 23, 2013, Gonzalez was paid $420 per week.  Thereafter, Gonzalez again asked Chen for a wage increase.  For the following two weeks, Gonzalez was paid $440 per week.  During the first week of April 2013, Gonzalez again approached Chen and asked for another raise.[5]  Gonzalez did not receive a pay increase and April 6, 2013 was the last day he worked at Farm Market.

---

[3] The court treats this and similar facts as undisputed because Defendants admit in their response to Plaintiffs' Statement of Undisputed Facts that Plaintiffs went directly to Chen each time they sought higher wages. (*See* Doc. 56-2 at ¶¶ 30–32, 42–44; Doc. 64 at ¶¶ 30–32, 42–44.) However, the court notes that Chen appears to have taken a different position during his earlier Rule 30(b)(6) deposition, testifying that, with the exception of Morales's final raise request which Chen himself did deny, Plaintiffs usually discussed raises with Farm Market's managers. (*See* Doc. 64-2 at 28–31.)

[4] The court does not consider this fact disputed because Defendants offer no evidence and assert no specific facts to support its denial, as required. *See* Fed. R. Civ. P. 56(c), (e). The evidence cited by Defendants says nothing about the date of Morales's last day of employment. (*See* Doc. 64 at ¶ 35; Doc. 64-2 at 30–31.) Moreover, this fact was already admitted by Defendants in their Answer to Plaintiffs' Complaint. (*See* Doc. 14 at ¶ 15; Doc. 32 at ¶ 15.)

[5] The court treats this fact as undisputed because Defendants admit it in their response to Plaintiffs' Statement of Undisputed Facts. (*See* Doc. 56-2 at ¶ 44; Doc. 64 at ¶ 44.) However, the court notes that, in his Rule 30(b)(6) deposition, Chen appears to deny the fact that Gonzalez asked for one last raise at the end of his employment. (*See* Doc. 64-2 at 32.)

During the entirety of their respective employments with Farm Market, both Plaintiffs were paid flat weekly rates.  Their weekly wages did not vary depending on how many hours they worked.  Plaintiffs were also not paid an overtime premium for working hours in excess of forty in a week.  Plaintiffs were paid in cash and entirely "off the books."  Chen helped make the decision to not report their salaries in Farm Market's corporate income tax returns.  Farm Market kept no records whatsoever regarding Plaintiffs' employment.

## II.   Disputed Facts

The parties dispute how many hours Chen worked in Farm Market each day.  Plaintiffs allege he was there every day from mid-afternoon until closing.  (Doc. 56-2 at ¶ 19.)  Defendants submit that Chen was rarely there because he was in poor health during much of Plaintiffs' employment.  (Doc. 64 at ¶ 19; Doc. 64-2 at 10–11, 26.)  On the days that he would go to Farm Market, Defendants allege that he would only stay for two or three hours.  (Doc. 64-2 at 10–11.)

The parties also disagree about the extent of Chen's managerial role at Farm Market.  Plaintiffs contend that Chen "monitored employees at [Farm Market], directed them in their daily tasks, assigned new tasks, and enforced their work schedule."  (Doc. 56-2 at ¶ 20.)  Defendants dispute these claims, contending that because of Chen's health, his children acted "on behalf of [him] as the secretary and managers."  (Doc. 64 at ¶ 20; Doc. 64-1 at 15.)

The parties also dispute Chen's reaction to each Plaintiffs' final raise request.  Morales contends that when he complained about Chen not raising his wages as promised, Chen told him he was crazy and could either continue working for $445 per week or find new employment.  (Doc. 56-2 at ¶¶ 33–34.)  Defendants dispute this claim and allege that Chen offered to increase Morales's pay to $470/week during their last wage conversation.  (Doc. 64 at ¶¶ 33–34; Doc. 64-2 at 30–31.)  Similarly, Gonzalez contends that during his final raise conversation with Chen, Chen angrily refused to higher his pay and told him that if he wanted more money he should look for another job.  (Doc. 56-2 at ¶¶ 44–45.)  During that conversation, Gonzalez also alleges that Chen asked, "Why do all the fucking Guatemalan guys only think about money?"  (Id. at ¶ 45.)  Chen denies having made these statements.  (Doc. 64 at ¶ 45; Doc. 64-2 at 31–32.)

4

**Analysis**

## I.    Summary Judgment Standard

A party is entitled to summary judgment when it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[A]ll ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citation omitted).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). While "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists," the moving party "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223–24 (citations omitted). This is because "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Id.* at 1224 (citation omitted).

A party opposing a properly pleaded summary judgment motion "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (citations omitted); *see Wolinsky v. Standard Oil of Conn., Inc.*, 712 F. Supp. 2d 46, 51 (D. Conn. 2010) (nonmoving party may only defeat summary judgment by "com[ing] forth with specific facts, supported by non-conclusory, admissible evidence, that demonstrate the existence of a dispute of material fact" (citations omitted)). If the nonmovant offers evidence that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## II.  FLSA Claims Against Farm Market

The FLSA obligates the provision of minimum wage and overtime to employees who "are employed by an enterprise that is engaged in interstate commerce or in the production of goods for interstate commerce." *Marin v. JMP Restoration Corp.*, No. 09-CV-1384 (CBA)(VVP), 2012 WL 4369748, at *3 (E.D.N.Y. Aug. 24, 2012) (citing 29 U.S.C. § 207(a)(1)); *see* 29 U.S.C. § 206(a). At all times relevant to the Complaint, the minimum wage under the FLSA was $7.25 an hour. *See* 29 U.S.C. § 206(a)(1). As for overtime, "[i]n general, the FLSA provides that an employee who works more than forty hours in a given week is entitled to compensation at 'one and one-half times the regular rate at which he is employed.'" *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 202 (D. Conn. 2013) (quoting 29 U.S.C. § 207(a)).

### A.  Farm Market was an Enterprise Engaged in Interstate Commerce

"Commerce" as defined under the FLSA means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). An "enterprise engaged in commerce or in the production of goods for commerce" is one that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and whose annual gross volume of sales equals or exceeds $500,000. *Id.* at §§ 203(s)(1)(A)(i)–(ii).

It is undisputed that Farm Market was an enterprise engaged in interstate commerce or in the production of goods for commerce.

### B.  Farm Market was Plaintiffs' Employer Under the FLSA

The FLSA defines an "employee" as "any individual employed by an employer," and an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §§ 203(d), (e)(1). The Act defines "employ" as "to suffer or permit to work." *Id.* at § 203(g).

It is undisputed that Plaintiffs were employees of Farm Market for purposes of the FLSA and that Farm Market was their employer under the FLSA.

### C.    Farm Market Did Not Provide Plaintiffs With Minimum Wage and Overtime Compensation, as Required

In FLSA actions for unpaid minimum wage and overtime compensation, the employee generally bears "the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds*. However, where an employer fails to keep proper employment records, as required, *see* 29 U.S.C. § 211(c), a burden-shifting framework applies. *See Mt. Clemens*, 328 U.S. at 687–88. Under the *Mt. Clemens* framework, "where the employer's records are inaccurate or inadequate" as to an employee's "wages, hours and other conditions and practices of employment," then "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. Once the employee has met his initial burden, the burden:

> [S]hifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687–88 (citation omitted). Defendants admit that they kept no records whatsoever regarding Plaintiffs' employment. Therefore, the *Mt. Clemens* framework applies to Plaintiffs' claims.

Plaintiffs have met their initial burden under this framework. The Second Circuit has held that this burden "is not high," and that "it is well settled . . . that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (citations omitted); *see Mt. Clemens*, 328 U.S. at 687 (remedial nature of FLSA militates against making employee's burden an "impossible hurdle"). Plaintiffs have provided deposition testimony and sworn declarations indicating the number of hours they worked and the amount of compensation they received. Both have testified that they worked six days a week for a total of 67 compensable hours. Morales testified that he was paid $400 per week for his first three months of employment; $420 per week for the next three months; and $445 per week for his last fifteen months. Gonzalez declared that he was paid $400 per week for his first thirty-four weeks of employment; $420 per week for the next twenty-nine

7

weeks; and $440 per week for the last two weeks. Therefore Morales's highest hourly rate was $6.64 ($445 divided by 67 hours), and Gonzalez's highest hourly rate was $6.57 ($440 divided by 67 hours). Both of these rates are below the federal minimum wage. Additionally, both Plaintiffs testified that they did not receive an overtime premium for weekly hours worked in excess of forty. Accordingly, Plaintiffs have made out their prima facie case that Defendants violated the minimum wage and overtime provisions of the FLSA.

Under *Mt. Clemens*, the burden now shifts to Defendants to produce evidence that either shows "the precise amount of work performed" or "negative[s] the reasonableness of the inference to be drawn from the employee's evidence." 328 U.S. at 687–88. Here, however, Defendants have not offered any such evidence, as they do not dispute Plaintiffs' claims regarding the amount of wages paid or the amount of hours worked. Nor do Defendants dispute that Plaintiffs made less than $7.25 an hour and did not receive overtime compensation for hours worked in excess of forty. Rather, they admit that Plaintiffs "were paid fixed salaries regardless of the amount of time they worked," (Doc. 64 at 4), and argue that Plaintiffs were exempt from the FLSA's protections because they were paid on this salary basis. But this defense is insufficient to defeat Plaintiffs' motion for several reasons.

First, as noted by Plaintiffs, exemptions are affirmative defenses that must be specifically pleaded. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974) ("[T]he application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof.") (citations omitted). Defendants have neither referenced a specific exemption nor sufficiently pled such a defense. Second, Defendants misunderstand the "salary basis" test codified at 29 C.F.R. § 541.602. The salary basis test is a component of certain exemptions to the FLSA, not an exemption in and of itself. If an employee's primary duty is not the type of work specifically exempted under the Act, the salary basis test is not applicable. Here, Plaintiffs held the positions of butcher and produce clerk. These jobs do not fall within any recognized FLSA exemption. *See* 29 U.S.C. § 213. Third, even if Plaintiffs' job duties were of the type exempted under the Act, they would not be exempted simply because they were paid on a salary basis. Rather, to be exempt, an employee also needs to be paid a salary of at least $455 per week. *See* 29 C.F.R. § 541.600(a). Therefore, Plaintiffs would not be exempt from the FLSA's protections because their salaries fell below the statutory minimum.

8

There are no material facts in dispute with respect to Plaintiffs' FLSA claims against Farm Market and Plaintiffs are entitled to judgment as a matter of law.

**III.    FLSA Claims against Chen**

Plaintiffs submit that Chen was also their employer under the FLSA and can be held individually liable as a matter of law. Chen disagrees, arguing that his poor health resulted in him having "little to do with the management of the corporate defendant." (Doc. 64 at 4.) Defendants contend that awarding summary judgment to Plaintiffs on this claim is inappropriate because facts regarding Chen's involvement and control over Farm Market are in dispute.

The FLSA "defines the verb 'employ' expansively," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (citing 29 U.S.C. § 203(g)), and "[a]n employee may simultaneously have multiple employers within the meaning of the FLSA." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 507 (S.D.N.Y. 2015) (citation omitted). Under certain circumstances, the FLSA permits "an individual within a company that undisputedly employs a worker [to be held] personally liable for damages as that worker's 'employer.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013). In the individual-liability context, "the remedial nature of the [FLSA] . . . warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy" and "courts have continually emphasized the extraordinarily generous interpretation [the FLSA] is to be given." *Id.* at 110 (internal quotation marks and citations omitted). The Second Circuit has held that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

To determine whether an individual is an employer as a matter of "economic reality," the Second Circuit traditionally: (1) determines the scope of the individual's authority or "operational control" over a company, (2) employs the four-factor test laid out in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), and (3) considers the totality of the circumstances. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Having considered each of these standards, the court concludes that Defendants have not presented sufficient facts to create a triable issue as to whether Chen was Plaintiffs' employer as a matter of economic reality within the meaning of the FLSA.

### A.    Guiding Precedent

The court begins its analysis by noting that the Second Circuit has squarely addressed this issue and reached the same conclusion in two cases involving similar circumstances. The first case, *Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 136, 138 (2d Cir. 1999), was an action brought by the Secretary of Labor against RSR Security Services, Ltd. ("RSR"), a company that provided, among other things, security guard services to corporate clients. The Secretary alleged that RSR failed to pay its security guard employees minimum wage and overtime. *See id.* at 138. One of RSR's two shareholders was an individual named Murray Portnoy. *See id.* at 136. Portnoy was also chairman of the board. *See id.* While Portnoy "exercised broad authority over RSR operations . . . he was not directly involved in the daily supervision of the security guards." *Id.* Portnoy gave some of RSR's employees (including senior executives) instructions and he "kept himself apprised of RSR operations by receiving periodic reports from employees." *Id.* at 136–37. Portnoy was "viewed by others as having control over RSR" and "represented himself . . . as having such authority." *Id.* at 137. Moreover, Portnoy had access to bank credit for the corporation, permitting him to "exercise[] financial control." *Id.* at 136.

After a bench trial, the district court ruled that Portnoy was an employer of the security guards under the FLSA. *See id.* at 138. The Second Circuit affirmed, holding that even though two other company employees hired and fired the guards, managed the guards, monitored the guards' performance, and oversaw the daily operation of the business, Portnoy still exercised control over the company as a matter of economic reality. *See id.* at 136, 140–41. Though he did not supervise the security guards daily, he hired managers (including "individuals who were in charge of the guards"), occasionally controlled work schedules and conditions of employment, and, although he did not set wages, Portnoy had "participate[d] in the method of payment" to employees. *Id.* at 136, 140. The Circuit also emphasized Portnoy's exercise of general authority and financial control over RSR. *See id.*

The second case, *Irizarry v. Catsimatidis*, 722 F.3d 99, 101–02 (2d Cir. 2013), involved a wage-and-hour dispute against a supermarket chain and John Catsimatidis, the company's chairman, president, and chief executive officer. The Second Circuit affirmed the district court's summary judgment ruling that Catsimatidis was the plaintiffs' employer under the FLSA. *See id.* at 102. In evaluating his operational control over the company, the Circuit highlighted how "[a]lthough Catsimatidis did not exercise managerial control in stores on the day-to-day level of a manager . . . he exercised influence in specific stores on multiple occasions" and had "functional control over the enterprise as a whole." *Id.* at 113, 116. Additionally, Catsimatidis hired managerial employees and reviewed financial reports to stay informed of the company's performance. *See id.* at 112, 114–16. He also had financial control over the company. *See id.* at 115–16. Reviewing the totality of the circumstances, the Circuit explained that although there was no evidence that Catsimatidis had any interaction with the plaintiffs, his "actions and responsibilities—particularly as demonstrated by his active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees, and his actions in individual stores—demonstrate that he was an 'employer' for purposes of the FLSA.'" *Id.* at 116–17.

Using these two precedents as a guide, the court now turns to assessing Plaintiffs' FLSA claims against Chen.

**B.     Operational Control**

The court first considers the scope of Chen's operational control over Farm Market. Plaintiffs allege that Chen monitored and supervised employees in their daily tasks. (Doc. 56-2 at ¶ 20.) Defendants dispute Chen's involvement in the day-to-day management of Farm Market, and argue that he was not Plaintiffs' employer within the meaning of the FLSA because his health required him to delegate responsibilities to Farm Market's managers. (Doc. 64 at ¶ 20; Doc. 64-1 at 15; Doc. 64-2 at 10–11, 26.) However, this factual dispute is ultimately immaterial to the operational control inquiry.

An individual exercises operational control over employees "if his or her role within the company, and the decision it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. This level of control does not mean, "that the

11

individual 'employer' must be responsible for managing plaintiff employees—or, indeed, that he
or she must have directly come into contact with the plaintiffs, their workplaces, or their
schedules," but "the relationship between the individual's operational function and the plaintiffs'
employment must be closer in degree than simple but-for causation." *Id.* Therefore, evidence of
an individual's direct control over employees is not the only relevant consideration, but rather,
"evidence showing [an individual's] authority over management, supervision, and oversight of [a
company's] affairs in general is relevant to the totality of the circumstances in determining [the
individual's] operational control of [the company's] employment of [the plaintiff employees]."
*Id.* (internal quotation marks and citation omitted).

　　　Here, accepting all reasonable inferences favorable to Defendants as the nonmoving
parties, the undisputed and material facts demonstrate that Chen actively exercised operational
control over Farm Market within the meaning of the FLSA. Regardless of Chen's management
of Farm Market's daily operations, it is evident that, just like the individual defendants in *RSR*
and *Irizarry*, Chen exercised oversight over significant aspects of the store's operations and that
his control over Farm Market directly affected Plaintiffs' conditions of employment.

　　　Chen was one of two owners of Farm Market and its President. He hired the store's
management team and posted hiring notices for new workers. (Doc. 64-2 at 12.) Farm Market's
managers, namely Chen's daughter and daughter-in-law, met with him to discuss hiring and
wage increases. (*Id.* at 13–15, 18.) He set the store's hours of operation. (*Id.* at 16.) Critically,
Chen exercised direct authority over the rate at which Plaintiffs were paid. *See Inclan*, 95
F. Supp. 3d at 509 (employer's "operational control directly affected plaintiffs' conditions of
employment, as [he] had at least shared responsibility for the [company's] pay policies"). Chen
was at least partially responsible for financial decisions such as choosing not to report Plaintiffs'
salaries on income tax returns and paying Plaintiffs "off the books." (*See* Doc. 64-2 at 6–7.) He
also admitted to being the one who granted or denied each of Plaintiffs' raise requests, meaning
he himself was the person directly responsible for depriving employees of their lawful
compensation. (Doc. 56-2 at ¶¶ 30–32, 42–44; Doc. 64 at ¶¶ 30–32, 42–44.) Just like the
individual defendants in *RSR* and *Irizarry*, Chen was not a mere figurehead or owner in title
alone, but rather had authority over management, supervision, and oversight of Farm Market's
affairs in general. Even though it is disputed whether Chen had day-to-day control of specific

operations within Farm Market, his undisputed responsibilities, such as being involved in hiring decisions and determining employee compensation, reflect operational control over significant aspects of Farm Market.

That Chen delegated authority to his managers is not determinative to the operational control inquiry. *See Irizarry*, 722 F.3d at 112 (individual defendant liable as employer even though had "series of subordinate managers" that ran business operations); *see also Magnuson v. Newman*, No. 10 Civ. 6211(JMF), 2013 WL 5380387, at *9 (S.D.N.Y. Sept. 25, 2013) ("[t]he fact that [the defendant-employer] delegated supervision over some operations to [others] . . . does not preclude a finding that he retained 'operational control'" (citing *RSR*, 172 F.3d at 139)). Chen still "had direct involvement with the [employees'] operations from time to time and was generally involved with all of [the company's] operations." *RSR*, 172 F.3d at 141. And just like the individual defendants in *RSR* and *Irizarry*, Chen stayed apprised of Farm Market's operations through informational updates from his managers.

In sum, this is not a case in which an individual merely *could* have supervised the relationship between his company and its employees. *See Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262–63 (8th Cir. 1963) (holding that majority stockholder and dominant company personality who had "nothing to do with the hiring of the employees or fixing their wages or hours" was not employer under FLSA). Rather, much as the Second Circuit ruled in *RSR* and *Irizarry*, the undisputed facts demonstrate that Chen's involvement in Farm Market "affect[ed] employment-related factors such as . . . personnel,[and] compensation." *Irizarry*, 722 F.3d at 109 (citing *RSR*, 172 F.3d at 140). Even accepting Defendants' claim that Chen delegated much of his authority to Farm Market's managers, "[e]mployer power that is restricted or exercised only occasionally does not mean never exercised." *Id.* at 110 (internal quotation marks omitted). Assessing the facts and drawing all inferences in the light most favorable to Defendants, Chen exercised operational control over both the company and Plaintiffs' conditions of employment.

## C.   *Carter* Factors

The court must also employ the four-factor test laid out in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), in making its determination of economic reality. These factors include: "whether the alleged employer (1) had the power to hire and fire the employees,

(2) supervised and controlled employee work schedules or conditions of employment,
(3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at
12 (citation omitted). "No one of the four factors standing alone is dispositive." *RSR*, 172 F.3d
at 139 (citation omitted).

Here, the same two factors that weighed in favor of individual liability in *Irizarry* support
the conclusion that Chen was Plaintiffs' employer. *See* 722 F.3d at 116. First, indisputably,
Chen had the power to hire and fire employees. Even if Chen did not hire Plaintiffs, or any other
low-level employee for that matter, this factor is concerned with whether the alleged employer
*could* hire and fire, not whether he actually exercised that power. *See Glatt v. Fox Searchlight
Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013) ("This factor focuses on 'the power to hire
and fire,' not whether that power was exercised." (citing *Carter*, 735 F.2d at 12)), *vacated and
remanded on other grounds*. As the owner and president of Farm Market, Chen clearly had the
authority to hire its workers. Such authority is evidenced by the fact that Chen personally
selected and hired Farm Market's management team. (Doc. 56-2 at ¶ 18; Doc. 64 at ¶ 18.) *See
RSR*, 172 F.3d at 140 ("Although this hiring involved mainly managerial staff, the fact that he
hired individuals who were in charge of the [employees] is a strong indication of control."
(citation omitted)). Moreover, it is undisputed that Chen posted notices outside Farm Market
indicating that the store was hiring and that he shared the power to hire new employees with both
his daughter and daughter-in-law. (Doc. 56-2 at ¶¶ 22–23; Doc. 64 at ¶ 22; Doc. 64-2 at 12–15.)

Second, Chen played an authoritative role in determining the rate and method of
Plaintiffs' payment. Chen was partially responsible for the decision to pay Plaintiffs "off the
books." (Doc. 64-2 at 6–7.) All parties admit that Plaintiffs went directly to Chen when seeking
higher wages. (Doc. 56-2 at ¶¶ 30–32, 42–44; Doc. 64 at ¶¶ 30–32, 42–44.) Not only was Chen
the individual who granted or denied these raise requests, but he also determined by how much
each wage would increase. (Doc. 56-2 at ¶¶ 30–32, 42–44; Doc. 64 at ¶¶ 30–32, 42–44; Doc.
64-2 at 28, 31.) *See RSR*, 172 F.3d at 136–37 (individual defendant was employer in part
because he was "involved in some aspects of the compensation" and awarded raises); *see also
Inclan*, 95 F. Supp. 3d at 511 (individual held to be employer in part because he "exercised
significant functional control over not only the general business affairs of the [company], but
indeed over plaintiffs' wages"). Chen clearly had authority to make material decisions regarding

wages and would certainly have had the "authority to sign [Plaintiffs'] paychecks," had they received "on the books" compensation. *RSR*, 172 F.3d at 140.

Defendants dispute Plaintiffs' claim that Chen supervised or controlled Plaintiffs' work schedules or conditions of employment on a daily basis, (Doc. 56-2 at ¶ 20; Doc. 64 at ¶ 20), another *Carter* factor. However, the Second Circuit has emphasized that the existence of an employer-employee relationship "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *RSR*, 172 F.3d at 139. Rather, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." *Id.* (internal quotation marks, brackets, and citation omitted). Here, as discussed above, the undisputed facts demonstrate that Chen at least occasionally exercised control over significant conditions of Plaintiffs' employment, such as their compensation.

Nevertheless, even if every factual dispute implicating this single *Carter* factor was resolved in Chen's favor, this factor, by itself, is not dispositive to the individual liability analysis. *See Irizarry*, 722 F.3d at 115 (individual defendant held liable as employer even where his involvement did not "relate closely" to this *Carter* factor). First, the *Carter* factors do not comprise a "rigid rule for the identification of a[] FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 105 (internal quotation marks and citations omitted); *see Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003) (Second Circuit precedents do not support "the application of a rigid four-part test"). Moreover, the two *Carter* factors which Chen does indisputably satisfy, hiring managerial employees and having overall financial control of the company, are two factors that the Second Circuit has "particularly emphasized" in the individual liability analysis. *See Irizarry*, 722 F.3d at 116 (citing *RSR*, 172 F.3d at 136–37, 140).

Second, even if Chen did not satisfy *any* of the *Carter* factors, the court would still be obligated to consider any and all additional circumstances that evidenced his control over Plaintiffs. *See Zheng*, 355 F.3d at 69 (concluding that district court erred when it determined that defendants were not employers "based *exclusively* on the four factors mentioned in *Carter*," as

Second Circuit has not held "that a positive finding on those four factors is *necessary* to establish an employment relationship"). Therefore, that Chen hangs his summary judgment defense on factual disputes implicating a single *Carter* factor does not, by itself, materially affect the court's analysis of his individual liability.

The final *Carter* factor, whether the alleged employer was involved in maintaining employment records, is of little importance here. As Plaintiffs were paid "off the books," no Farm Market employee was tasked with keeping their records. The fact that Plaintiffs cannot demonstrate that Chen satisfied this factor does not count against them because the FLSA specifically requires employers to "make, keep, and preserve" records of employee "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c); *see* 29 C.F.R. § 516.2; *see also Morales v. Cancun Charlie's Rest.*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *4 (D. Conn. Nov. 23, 2010) (in cases where employer failed to maintain adequate employment records fourth factor is "of little significance" and does not preclude finding of individual liability (citations omitted)). Additionally, "that this fourth factor is not met is not dispositive." *RSR*, 172 F.3d at 140 (citation omitted).

Assessing the facts and drawing all inferences in the light most favorable to Chen, his role within Farm Market clearly satisfies at least two of the four *Carter* factors.

**D.     Totality of the Circumstances**

The court now turns to consider the totality of the circumstances. "The Second Circuit has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry*, 722 F.3d at 104 (internal quotation marks and citation omitted). The totality of the evidence leads to the conclusion that Chen was Plaintiffs' employer under the FLSA. While, mere "[o]wnership . . . is insufficient to establish that an individual is an 'employer,'" *id.* at 111, Chen's own testimony and the other undisputed facts demonstrate his direct involvement in Farm Market's affairs and decisions on employee-related matters. He retained and exercised control over enough significant aspects of Farm Market's business to fit within the FLSA's expansive definition of "employer." There are no material facts in dispute with respect to Plaintiffs' FLSA claim against Chen and Plaintiffs are entitled to judgment as a matter of law.

**IV.     CMWA Claims Against Farm Market and Chen**

The CMWA, codified at Conn. Gen. Stat. § 31-58 *et seq.*, "provides wage and overtime guarantees similar to the FLSA," *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002), with the exception that there is no interstate commerce requirement. The CMWA also defines "employ" as "to employ or suffer to work," and parallels the FLSA's breadth with nearly identical definitions of "employee" and "employer." *See* Conn. Gen. Stat. § 31-58(d), (e), (g).

At all times relevant to the Complaint, the minimum wage under the CMWA was $8.25 an hour. *See id.* at § 31-58(i). The CMWA also has an overtime provision requiring employers to pay employees for any hours over forty in a week at a rate of one and one-half times each employee's regular rate. *See id.* at §§ 31-76b, 31-76c. "Any employer who pays or agrees to pay an employee less than the minimum fair wage or overtime wage shall be deemed in violation of the provisions of [the CMWA]." *Id.* at § 31-60(a).

**A.     CMWA Claim Against Farm Market**

Defendants admit that Plaintiffs were employees of Farm Market for purposes of the CMWA and that Farm Market is an employer under the CMWA. Defendants also concede that Plaintiffs did not receive the minimum wage or overtime compensation required by Connecticut law. Like the FLSA, CMWA exempts certain employees from overtime protections. *See id.* at § 31-76i. However, as with the FLSA, the "burden rests on the employer to establish that the employee comes within the statutory exemption[s]." *Butler v. Hartford Tech. Inst.*, 704 A.2d 222, 228 (1997) (citation omitted). Defendants have not specifically pled an exemption. Moreover, none of the exemptions apply to Plaintiffs.

In *Schoonmaker v. Lawrence Brunoli, Inc.*, 828 A.2d 64, 83, 86–88 (2003), the Connecticut Supreme Court adopted the federal *Mt. Clemens* burden-shifting framework to state employment claims involving an employer whose records are inaccurate or incomplete. As discussed above, Plaintiffs, through deposition testimony and sworn affidavits, have satisfied their burden of demonstrating that they regularly worked 67 hours a week, were never paid more than $445 per week, and did not receive an overtime premium for weekly hours worked in excess of forty. Because Defendants failed to comply with CMWA's record-keeping requirements, *see* Conn. Gen. Stat. § 31-66, they bear a similar burden as they did under the

FLSA of proving that Plaintiffs worked less than they claim or to negate the reasonableness of Plaintiffs' evidence. *See Schoonmaker*, 828 A.2d at 86. Defendants have offered no evidence to meet their burden, and Plaintiffs are therefore entitled to judgment as a matter of law on their CMWA minimum wage and overtime claims against Farm Market.

### B.     CMWA Claim Against Chen

As for Plaintiffs' CMWA claims against Chen, the Connecticut Supreme Court has declined to adopt the economic reality test used by the Second Circuit to define an employer. *See Butler*, 704 A.2d at 227 n.8. The term "employer" as used in Conn. Gen. Stat. § 31-72, "encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler*, 704 A.2d at 227. "Because the primary purpose of Section 31-72 is remedial in nature, Connecticut courts have broadly construed the definition of employer," *Morales*, 2010 WL 7865081, at *6 (citation omitted), and "given a liberal construction in favor of those whom the legislature intended to benefit." *Tianti, ex rel. Gluck v. William Raveis Real Estate, Inc.*, 651 A.2d 1286, 1289 (1995) (citation omitted).

As set forth in more detail in the above FLSA analysis, there is no genuine dispute that Chen had the authority and oversight over Farm Market to control its hours and employee compensation. As co-owner, Chen was the ultimate responsible authority at Farm Market, evidenced by the fact that he set the store's hours of operations and helped make key personnel and financial decisions. *See Butler*, 704 A.2d at 227–28 (holding defendant individually liable because he had authority over hours of employment and control over all wage decisions). He regularly determined how much Plaintiffs would be paid and in what manner. He was involved in the decision to pay Plaintiffs "off the books" and was the individual who granted or denied each of Plaintiffs' raise requests. As such, he had "ultimate authority and control" at Farm Market and was the specific cause of Plaintiffs being underpaid. *See Morales*, 2010 WL 7865081, at *6 (individual defendant liable under CMWA where he was co-owner, made personnel decisions, managed company finances, determined rate of employee pay, and paid plaintiff-employee "off the books"). Accordingly, Chen is liable as an employer under the CMWA as a matter of law.

## V.     Back Pay for Minimum Wage and Overtime Violations

Plaintiffs are entitled to damages for their unpaid minimum wages and overtime under either the FLSA or the CMWA.  No evidentiary hearing is necessary because the damages resulting from Defendants' minimum wage and overtime violations are "susceptible of mathematical computation."  *Id.* at *2 (citation omitted); *see Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (evidentiary hearing unnecessary "as long as [the court] ensure[s] that there [is] a basis for the damages specified").

Though the FLSA minimum wage during the relevant time period was only $7.25 per hour, Plaintiffs are entitled to damages based on Connecticut's higher minimum wage of $8.25 per hour.  *See Pau v. Chen*, Civil No. 3:14cv841(JBA), 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015) (where defendant violates both federal and state law, court "will award damages pursuant to the statute that provides the greater amount of damages").  Plaintiffs worked 67 hours per week and therefore are entitled to an overtime premium for 27 of those hours.

The court calculates the amount of back pay owed to Plaintiffs as follows:

### A.     Morales

1)  Total amount Morales should have received:

Straight time wages: ($8.25/hr x 40 hrs/wk) x 91 weeks = $30,030
+
Overtime wages: ($12.375/hr x 27 hrs/wk) x 91 weeks = $30,405.38

Total:  **$60,435.38**.

2)  Total amount Morales did receive:

$400/wk x 13 weeks = $5,200
$420/wk x 13 weeks = $5,460
$445/wk x 65 weeks = $28,925

Total:  **$39,585**.

3) Total amount of back pay Morales is now owed:

$60,435.38 (step 1 total) – $39,585 (step 2 total) =

**TOTAL: $20,850.38**

**B.      Gonzalez**

1) <u>Total amount Gonzalez should have received</u>:

Straight time wages: ($8.25/hr x 40 hrs/wk) x 65 weeks = $21,450
+
Overtime wages: ($12.375/hr x 27 hrs/wk) x 65 weeks = $21,718.13

Total: **$43,168.13**.

2) <u>Total amount Gonzalez did receive</u>:

$400/wk x 34 weeks = $13,600
$420/wk x 29 weeks = $12,180
$440/wk x 2 weeks = $880

Total: **$26,660**.

3) <u>Total amount of back pay Gonzalez is now owed</u>:

$43,168.13 (step 1 total) − $26,660 (step 2 total) =

**TOTAL: $16,508.13**

As shown, Morales is owed $20,850.38 in unpaid minimum wages and overtime, and Gonzalez is owed $16,508.13.

**VI.      Liquidated Damages**

Both the FLSA and the CMWA permit a plaintiff to recover liquidated damages in an amount equal to his unpaid wages. *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. §§ 31-68(a), 31-72. Under the FLSA, these damages are "generally required." *Barfield*, 537 F.3d at 150 (citation omitted). The district court has discretion to deny them only where the employer shows that it acted in "subjective 'good faith'" and had "objectively 'reasonable grounds'" for believing that its acts or omissions did not violate the FLSA." *Id.* (citing 29 U.S.C. § 260). The employer's "burden is a difficult one, with double damages being the norm and single damages the exception." *RSR*, 172 F.3d at 142 (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). The good-faith defense "requires plain and substantial evidence of at

least an honest intention to ascertain what the [FLSA] requires and to comply with it." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (citations omitted).

FLSA liquidated damages are due in this case because Defendants have not even pled good faith, much less offered any evidence with which to attempt to carry their burden. Moreover, there is no evidence that Defendants took active steps to ascertain the dictates of the FLSA and then moved to comply with them, or had otherwise objectively reasonable grounds for believing Farm Market was in compliance with the FLSA. Because Defendants have the burden of proving good faith and reasonableness and failed to offer any such evidence, an award of liquidated damages equal to the amount of back pay is mandated on summary judgment. *See Celotex*, 477 U.S. at 322–23 (summary judgment appropriate where nonmoving party fails to make showing sufficient to create genuine issue of material fact regarding matter on which nonmoving party has burden of proof).

When Plaintiffs initiated this action and filed their summary judgment motion, liquidated damages under the CMWA were discretionary. Such double damages were awarded only if the plaintiff-employees established that the defendant-employer acted with "bad faith, arbitrariness or unreasonableness." *Ravetto v. Triton Thalassic Techs., Inc.*, 941 A.2d 309, 317 (2008) (citations omitted). Courts in this Circuit have traditionally justified awarding liquidated damages under both federal and state law when the relevant statutes serve "fundamentally different purposes." *See Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008) (citations omitted). The weight of authority in this district has been to support an award of liquidated damages under both the FLSA and the CMWA because the FLSA has been interpreted as a compensatory statute, whereas the CMWA was traditionally viewed as punitive. *See, e.g., Pau*, 2015 WL 6386508, at *10–11; *Morales*, 2010 WL 7865081, at *8–9; *see also Tapia v. Mateo*, 96 F. Supp. 3d 1, 5–6 (D. Conn. 2015). These distinct purposes were evidenced by the fact that liquidated damages were automatically awarded under the FLSA absent an existing affirmative defense, but only awarded under the CMWA if plaintiff-employees proved bad employer conduct.

However, on October 1, 2015, amendments to the CMWA made double damages mandatory, and, just like under the FLSA, placed a burden on employers to avoid such damages by demonstrating "a good faith belief that the underpayment of such wages was in compliance

with the law." *See* Conn. Gen. Stat. §§ 31-68(a), 31-72. The court believes the amendments are likely to apply retroactively to Plaintiffs' case. In Connecticut, while "statutes affecting substantive rights shall apply prospectively only . . . it is presumed that procedural statutes will be applied retrospectively . . . absent a clear expression of legislative intent to the contrary." *D'Eramo v. Smith*, 872 A.2d 408, 415–16 (2005) (internal quotation marks and citations omitted); *see* Conn. Gen. Stat. § 55-3. Laws that affect remedies and prescribe methods of obtaining redress typically fall into the latter category. *See D'Eramo*, 872 A.2d at 416 (citations omitted). If retroactive, Plaintiffs would be entitled to liquidated damages under the amended CMWA for the same reasons they are entitled to such damages under the FLSA (namely, that Defendants have produced no evidence of good faith).

However, the court notes that the amendments appear to render the previous distinctions between the FLSA and the CMWA "largely illusory." *See Santana v. Brown*, No. 14 Civ. 4279(LGS), 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015) (holding that plaintiff was not entitled to double recovery for liquidated damages under both FLSA and New York statute (citation omitted)). Accordingly, it is no longer clear that Plaintiffs would be entitled to recover under both statutes. Other courts in this Circuit have considered denying such simultaneous recovery in response to similar statutory amendments. *See, e.g., Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) ("[T]here is an emerging trend towards denying a cumulative recovery of liquidated damages, as the [state law] liquidated damages provision now closely parallels the FLSA provisions" (citations omitted)); *Inclan*, 95 F. Supp. 3d at 505–06 (declining to award both state and FLSA liquidated damages because any distinction between purposes of two statutes was "undermined" by recent amendments to state statute which made it virtually identical to the FLSA); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012) ("To the extent the federal and state statutes now provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms.").

The parties had no reason to brief this issue originally and the amended provisions have yet to be considered by any Connecticut court. Presently, this court is unable to make a ruling on the simultaneous recovery claim. Accordingly, the court orders supplemental briefing as to: (1) the retroactivity of the CMWA's 2015 amendments, and (2) issues related to double recovery

of liquidated damages under the FLSA and the amended CMWA. The court will allow Plaintiffs thirty (30) days from entry of this order to submit briefing on these two discrete issues. Thereafter, Defendants will have fifteen (15) days to respond to those same issues.

**VII.    Attorney's Fees and Costs**

In their motion, Plaintiffs requested an award of attorney's fees and costs. Subsequently, in response to Defendants' representation that they want to conduct limited discovery on this issue, Plaintiffs have withdrawn their request. (Doc. 66 at 6.) Accordingly, the court does not consider this issue at the present time.

<u>**Conclusion**</u>

Plaintiffs' Motion for Summary Judgment (Doc. 56) is GRANTED IN PART and DENIED IN PART. Plaintiffs are entitled to judgment as a matter of law as to their FLSA and CMWA minimum wage and overtime claims against Defendants Farm Market and Chen, and back pay as calculated above. Plaintiffs are also entitled to liquidated damages, but the court reserves judgment as to the quantity of such damages until the parties have an opportunity to file supplemental briefing. The court will issue a judgment reflecting Defendants' total liability after resolving the issue of liquidated damages.

Dated this 3rd day of May, 2016.

/s/ Geoffrey W. Crawford, USDJ

Geoffrey W. Crawford, Judge
United States District Court